Dear Mr. McCorquodale:
This office is in receipt of your opinion request wherein you question whether it is proper for the Calcasieu Parish Law Enforcement District (District) to sell, by private sale, immovable property it has declared surplus. You advise that the property has been appraised at approximately $95,000.00 and that an offer of $86,000.00 has been received. Additionally, you make reference to LSA-R.S. 33:4711, LSA-R.S. 33:4712 and Atty. Gen. Op. No. 92-606 as supporting the private sale of the above-mentioned surplus immovable property.
In view of the above, three primary issues are presented:
 1) Is the District vested with authority to sell surplus immovable property?
 2) In the event such authority exists, can the surplus immovable property be disposed of by private sale?
 3) If sold, may the surplus immovable property be disposed of at less than appraised value?
Law Enforcement Districts are political subdivisions of the State. La. Const. Art. VI § 44. They are special districts existing and created under the authority of the Constitution and the Legislature. La. Const. Art. VI § 19; LSA-R.S. 33:9001.
In regard to issue one above, research has revealed no statutory provisions that overtly or directly govern the sale of surplus immovable property by a special service district such as the Calcasieu Parish Law Enforcement District. This finding echoes the result of an earlier opinion of this office, Atty. Gen. Op. No. 92-606.
As cited above, LSA-R.S. 33:9001 et seq., creates and defines the purpose and powers of law enforcement districts. LSA-R.S. 33:9001 states that the purpose of law enforcement districts is for "providing financing to the office of sheriff" of the parish. Among the powers granted to law enforcement districts by the legislature are the power to tax, to issue bonds, and to borrow money. LSA-R.S. 33:9002 et seq. Of particular relevance to this inquiry is LSA-R.S. 33:9004, which provides, in pertinent part:
 A. In addition to the powers otherwise granted by this Chapter, law enforcement districts shall have the authority to:
 (1) To execute such contracts and other instruments and take such other action as may be necessary to fulfill the purposes of this Chapter.
* * *
When read in para materia, LSA-R.S. 33:9001 and LSA-R.S. 33:9004(A)(1) appear to vest in law enforcement districts the authority to dispose of surplus immovable property. LSA-R.S. 33:9004(A)(1) grants the districts the power to execute contracts and other legal instruments, as necessary, to provide funding to the office of the sheriff which is the specifically stated objective of LSA-R.S. 33:9001.
As you explained in prior personal communication, the intended use of the proceeds resulting from sale of the surplus immovable property owned by the District is to purchase needed personal protection equipment for the officers and/or deputies of the District. It is the opinion of this office that there can be no more appropriate use of District finances than to provide for the personal safety and protection of those individuals charged with upholding the laws of the State and Parish and protection of its citizenry.
Additional support for the foregoing conclusion can be found in the case of Alexis v. Kare-Sue, Inc., 187 So.2d 476 (La.App. 4 Cir. 1966). The case involved a water district, not unlike a law enforcement district. The water district sought to dispose of idle, vacant immovable property. The court therein determined that the water district had the authority to sell its idle, vacant and surplus lands not dedicated for use by the public. Material to the present inquiry, the court further reasoned that corporate political subdivisions of the State have full and complete legal authority to dispose of excess real property and that it is not necessary for the legislature to say so in a special enactment. The Alexis court even went so far as to say that corporate political subdivisions have a duty to sell and dispose of such property.
Having determined that the District is vested with authority to dispose of its surplus immovable property, the next issue is the procedure that should be followed by the District in disposing of said property, i.e., can the property be disposed of by private sale or is a public sale required.
Again, just as the Revised Statutes do not address specific authority for law enforcement districts to dispose of surplus immovable property, they also fail to address the preferred method of sale. LSA-R.S. 41:131et seq. address the procedures and requirements involved for sale of state-owned immovable property.
According to State Land Office personnel, these procedures are followed when state land is offered for sale to the public. A description of the property offered for sale as well as the time, place, and terms of the sale are published in the official journal of the state and in the official journal of the parish where the property is located. LSA-R.S.41:133. A fixed, fair and reasonable price based upon appraisal of the property is also included in the published advertisement. This appraisal shall constitute the minimum price that will be accepted. LSA-R.S. 41:134.
LSA-R.S. 33:4711 and LSA-R.S. 33:4712 govern the sale of surplus immovable property by parishes and municipalities, respectively. The procedures set forth therein, as above, require open public disclosure imparting a minimum acceptable price and terms of the sale. In the case of municipalities, disposition by private sale is permissible.
As can be derived from the above, it is public policy that property no longer needed for public purposes and sought to be sold should first be advertised as such to the general public. As pronounced in Atty. Gen. Op. No. 92-606, "notice to sell land is required because property devoted to public use by its very nature is held and owned by a political subdivision in trust for the use and benefit of its citizens." This publication and notice also allows opportunity for opposition to the proposed action to be made known.
Thus, while there appears to be no known prohibition against private sale of surplus immovable property by a law enforcement district, as a matter of good public policy and out of an abundance of caution, it is the opinion of this office that the proposed sale of surplus immovable property be made public. This public disclosure provides equal opportunity to those who may be interested in purchasing the property as well as to those who may oppose such sale.
Issue number three asks whether it is permissible to dispose of surplus immovable property at a price less than appraised value. Here, again, we have consulted the State Land Office as the Revised Statutes provide no direction. We were advised that their office follows the mandates of LSA-R.S. 41:131 et seq. Once a property has been appraised, the value given in the appraisal constitutes the minimum acceptable price. If, after an appropriate time on the market the property has not sold at the appraised value, it may be devalued for a more expedient sale.
You have informed this office that the surplus immovable property sought to be sold by the District was appraised at approximately $95,000.00 in May, 1999 and an offer of $86,000.00 has been made. You further provide that the property was originally the site of an automobile service station and that certain environmental liabilities may exist. It is not clear whether this was taken into account in the appraisal or whether the site has been remediated.
Inquiry should be made into the underlying facts and consideration given to current market value of the property as well as the potential environmental liabilities and costs associated with cleanup and/or remediation. A review of the appraisal and possible re-appraisal may be necessary before proceeding.
Based upon the information presented, we hope this sufficiently addresses your inquiry and if further assistance is required or desired, please do not hesitate to contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________________ KEVIN L. HANCHEY Assistant Attorney General
RPI/KLH/tp
Date Received: Date Released: February 2, 2001
KEVIN L. HANCHEY Assistant Attorney General